## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| TERESA MACMARTIN, an individual, | No. 3:22-cv-610-BJD-LLL |
| *Plaintiff,* | |
| v. | |
| MARINE MANAGEMENT SERVICES, INC., a corporation; CROWLEY PERSONNEL, LLC, a limited liability company; FUGRO ENTERPRISE, INC., a corporation, | |
| *Defendants.* | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS AMENDED COMPLAINT FILED BY DEFENDANTS MARINE MANAGEMENT SERVICES, INC. AND CROWLEY PERSONNEL, LLC

Plaintiff, Teresa MacMartin ("Plaintiff" or "MacMartin"), respectfully submits this Memorandum of Law ("Memo") in Opposition to the Motion to Dismiss Plaintiff's Amended Complaint ("AC") ("Motion") [ECF No. 17] filed by Defendants, Marine Management Services, Inc. ("MMS") and Crowley Personnel, LLC ("Crowley") (collectively, "Crowley Defendants"). As set forth below, Crowley Defendants' Motion misstates both the facts and law and must be denied.

## STATEMENT OF RELEVANT FACTS

Plaintiff brings this suit against Crowley Defendants, as well as Fugro Enterprise, Inc. ("Fugro") (collectively, with Crowley Defendants, "Defendants"),

for their failure to adequately remedy a hostile work environment based on unsolicited and repeated sexual harassment she endured on Fugro's vessel ("Vessel") and thereafter, retaliating and constructively terminating her for complaining about the harassment.  Plaintiff executed a Crewmember Employment Agreement ("Agreement") with MMS (though both Crowley Defendants were listed on the Agreement) to work as a second cook on the Vessel, which is owned and operated by Fugro.  AC, ¶ 21.  Plaintiff was to work on a continuous rotating schedule on the Vessel: six weeks on and six weeks off.  *Id.,* ¶ 25.  Defendants maintained offices and operated in Florida and designated Plaintiff's work location to be Florida.  *Id.,* ¶¶ 18-20, 23.  The Vessel consisted of approximately 20 crew members (three or four of them women), and MacMartin was the ***only*** woman on the Vessel's marine crew.  *Id.,* ¶ 32.

During the six-week voyage (in the middle of the sea and with no escape), Neil Bennett ("Bennett"), one of Fugro's seaman who was much larger than MacMartin (*id.,* ¶ 52), and who she had to live directly next to and share a bathroom with (*id.,* ¶ 35), repeatedly harassed her.  The harassment included, *inter alia*, Bennett: fully unzipping his trousers while MacMartin was working alone in the galley at night (*id.,* ¶ 37); coming in and out of the galley for no specific reason while Plaintiff worked (*id.,* ¶ 41); pinning MacMartin to the sink (*id.,* ¶ 42); placing his hand on MacMartin's back and standing so close to her that she could feel his breath (*id.,* ¶ 41); attempting to kiss her (*id.,* ¶ 42); making obscene and disturbing noises (for example, snorting like a pig outside the

2

restroom while she was using it) (*id.,* ¶ 48); continuously hovering over Plaintiff physically (*id.,* ¶ 52); staring at her for four-to five minutes at a time (*id.*); making other countless microaggressions, including coughing on everything in the mess area when Bennett knew MacMartin's job was to sanitize everything to comply with COVID 19, which forced her to perform additional work (*id.,* ¶ 53); and deliberately sitting at Plaintiff's usual seat in an apparent effort to assert dominance (*id.,* ¶ 52). Despite repeatedly complaining verbally and in writing about Bennett's behavior to representatives of Defendants, they failed to remedy the situation. *Id.,* ¶¶ 39, 43, 45, 55, 57, 62, 72. At one point, Fugro's Ship Superintendent yelled at her, calling her "petty and unprofessional" and telling her to "just get over it." *Id.,* ¶ 58.

Based on Plaintiff's rotating schedule, she was supposed to return to the Vessel on February 2, 2021, but she was never recalled to work. *Id.,* ¶ 76. In fact, Plaintiff had to follow up with Defendants on three separate occasions regarding her next assignment. *Id.,* ¶¶ 72, 74-76, 78. In March 2021, approximately ten weeks after Plaintiff disembarked the Vessel and after she had followed up for the third time, Crowley's representative informed her that the Vessel was still in the shipyard, but offered her alternative union positions, which Plaintiff rejected because they were not equivalent to the job for which she was employed. *Id.,* ¶¶ 78-82. Defendants were unable to offer Plaintiff a job with assurances that she could work in a safe environment without her harasser being on board. *Id.,* ¶¶ 81-82.

3

## LEGAL ARGUMENT

## I.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, Plaintiff's complaint must only "contain facts sufficient to support a plausible claim to relief." *White v. Lemma*, 947 F.3d 1373, 1380 (11th Cir. 2020).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The inquiry "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).  Furthermore, courts must accept all factual allegations as true and view the facts in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  Indeed, "the threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low." *Klien & Heuchan, Inc. v. Costar Realty Information*, *Inc.*, 2009 WL 963130, at *1 (M.D. Fla. Apr. 8, 2009).  The AC thoroughly meets the requisite pleading standards and dismissal is unwarranted.

## II.    THE AC SUFFICIENTLY ALLEGES A HOSTILE ENVIRONMENT SEXUAL HARASSMENT CLAIM UNDER TITLE VII AND FCRA

To establish a hostile work environment based on sexual harassment, an employee must demonstrate the following elements: (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) the

harassment was based on sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of the employment; and (5) there is a basis for holding the employer liable for the harassment. *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1304–05 (11th Cir. 2016). Crowley Defendants take issue with the fourth element. While identifying several episodes of what Crowley Defendants admit to be allegations of "harassment," they contend the acts described in the allegations were not "severe or pervasive" enough to support a sexual harassment claim under Title VII or the FCRA. Motion at 4-5. Crowley Defendants' critique is incorrect for several reasons.

As a preliminary matter, Crowley Defendants' argument is premature. "[W]hether the treatment [MacMartin] was subjected to was sufficiently severe and pervasive, as necessary for a hostile work environment claim is an issue better answered at summary judgment," not during a motion to dismiss. *Phillips v. Harbor Venice Mgmt., LLC*, No. 8:19-CV-2379-T-33TGW, 2020 WL 2735201, at *4–5 (M.D. Fla. May 26, 2020). Unsurprisingly, none of the cases on which Crowley Defendants rely were decided during a motion to dismiss.[1]

Further, Crowley Defendants would have this Court apply the wrong standard to the facts of this case. In determining whether the conduct at issue is objectively severe and pervasive, the court must look at the "totality of the

---

[1] All the cases Crowley Defendants rely upon were decided at the summary judgment stage. *See, e.g., Colon v. Env't Techs., Inc.*, 184 F. Supp. 2d 1210 (M.D. Fla. 2001); *Garriga v. Novo Nordisk Inc.*, 390 F. App'x 952, 954 (11th Cir. 2010); *Campbell v. Sloss Indus.*, No. 2:09-CV-1566-IPJ, 2010 WL 11565832, at *1 (N.D. Ala. July 22, 2010).

circumstances." *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir.1982). The "'totality of the circumstances' standard requires that the Court view the [p]laintiff's environment as a whole even though no individual episode, viewed by itself, crosses the Title VII threshold." *Colon,* 184 F. Supp. 2d at 1219.

Courts have denied motions to dismiss hostile work environment claims in cases where plaintiff's experience was less severe or pervasive than what Plaintiff experienced here.[2]  Moreover, here, although they admit some of the harassment Plaintiff endured, Crowley Defendants ignore other critical facts alleged in the AC that further demonstrate a work environment that a reasonable person would find hostile and abusive.  For example, in addition to the harassment Crowley Defendants admit, Plaintiff *also* alleged that: she was trapped for six weeks on the Vessel, in the middle of the sea, and was the *only* woman on the Vessel's marine crew (AC, ¶ 32); during the entire voyage, she was forced to sleep directly next door to and had to share a bathroom with Bennett, her harasser, who was "much larger than MacMartin" (*id.,* ¶¶ 35, 52); Bennett came in and out of the galley while she worked, for no specific reason (*id.,* ¶ 41); Bennett pinned Plaintiff to the sink on one occasion (*id.,* ¶ 42); Bennett forced her to perform additional work as a result of his misconduct (*id.,* ¶ 53); and Bennett deliberately sat at

---

[2] *See, e.g., Phillips*, 2020 WL 2735201, at *4–5 (denying motion to dismiss, even though the alleged "conduct was not physically threatening or humiliating," but plaintiff received multiple angry text messages from her superiors, orders to stay home, was disregarded, and asked invasive personal questions about her surgery); *Flamberg v. Israel*, No. 13-62698-CIV, 2014 WL 1600313, at *5 (S.D. Fla. Apr. 21, 2014) (denying motion to dismiss, where plaintiff asserted that colleagues made jokes about him, sent him a threatening note, and fabricated statements about him that led to his termination).

Plaintiff's usual seat in an apparent effort to assert dominance over her (*id., ¶* 54). The AC also explained that Plaintiff had nowhere to go and no person to seek help from because, when she tried, not only was she ignored, but she was yelled at, called "petty and unprofessional," and told to "just get over it." *Id.*, ¶ 58. Clearly, Bennett's behavior toward Plaintiff was not an "isolated instance," "simple teasing," or the "offhand comments" that Crowley Defendants make it out to be. *See* Motion at 4. Thus, Counts I and III should not be dismissed.

## III.   PLAINTIFF ADEQUATELY ALLEGED A RETALIATION CLAIM UNDER TITLE VII AND FCRA

To state a claim of retaliation, a plaintiff must plausibly allege that: (1) she engaged in statutorily protected expression; (2) she suffered a materially adverse employment action; and (3) her employer's retaliatory motive was the "but for" cause of the adverse employment action. *Jean Pierre v. Park Hotels & Resort, Inc.*, 2017 WL 4408972, at \*3 (S.D. Fla. Oct. 4, 2017).  An adverse action is one that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry.*, 548 U.S. 53, 57 (2006).  "Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces [her] to quit [her] job." *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009).  Crowley Defendants make a series of assertions for their argument that the allegations to the retaliation claims do not satisfy the pleading standards, but none have any merit.

First, Crowley Defendants claim Plaintiff failed to state a retaliation claim because she did not allege a "materially adverse action."  Motion at 6-7. Specifically, while admitting that the AC alleges "that the Crowley Defendants 'failed to recall her to work after she complained about harassment' and 'failed to offer her a position in which she would be able to work in a safe environment,'" Crowley Defendants contend there was no "materially adverse action" because Defendants subsequently offered other alternative jobs to Plaintiff.  Motion at 5-6.  While Plaintiff was offered alternative (albeit materially different) positions, that does not negate the existence of a materially adverse action.  Indeed, courts have routinely found reassignment of duties to be a "classic" and "widely recognized" example of "forbidden retaliation."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71.

Second, Crowley Defendants contend that Plaintiff failed to state a claim for constructive discharge because she "cannot establish a severe and pervasive hostile work environment" and "a reasonable person would not be compelled to resign because of the allegations related to Bennett's conduct."  Motion at 7-8. However, as discussed above in Section II, *supra*, in viewing the totality of the circumstances, MacMartin's work environment was hostile and abusive, and no reasonable person would tolerate working every day for another six weeks in very close quarters, at sea and with no escape, with someone who had harassed her repeatedly and made her feel unsafe.

Moreover, these arguments are, once again, improper on a motion to dismiss.  In fact, in *Piccirillo v. City of Pembroke Pines*, 2016 WL 1028333, at \*6 (S.D. Fla. Mar. 15, 2016), a case relied on by Defendants, the court denied defendants' motion to dismiss, finding that although it "was unclear from the Amended Complaint just how many verbal and physical assaults or instances of other discriminatory conduct Plaintiff experienced, the allegations [were] sufficient at the pleading stage.  Discovery will bring these specific facts to light." *See also Swierkiewicz v. Sorema*, N.A., 534 U.S. 506, 511 (2002) ("Before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case. Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases.").  Thus, the retaliation claims must stand.

## IV.   THE FCRA APPLIES TO PLAINTIFF'S CLAIMS

Relying primarily on the text of the FCRA, where it states that its purpose is "to secure for all individuals ***within the state*** freedom from discrimination," Defendants argue that the FCRA cannot apply because Plaintiff is a non-Florida citizen, and the alleged conduct occurred outside of Florida.  Motion at 10. Defendants are legally and factually wrong.  In *Sinclair v. De Jay Corp.*, 170 F.3d 1045 (11th Cir. 1999), the Eleventh Circuit held that "the plain and unambiguous language of the FCRA requires only that an employer employ fifteen persons to qualify as a statutory employer under the FCRA.  It says nothing about where the

employees must work." The "language employed by the Florida legislature is clear and unambiguous, and there is no geographical limitation on the face of the statute." *Mousa v. Lauda Air Luftfahrt, A.G.*, 258 F. Supp. 2d 1329, 1341 (S.D. Fla. 2003). Here, Plaintiff has asserted that Defendants "employed 15 or more persons." AC, ¶¶ 85, 94.

Moreover, even though Plaintiff resides in Missouri, there are ample reasons why Florida has an interest in protecting her. Defendants not only maintained offices and operated in Florida, (AC, ¶¶ 18-20), ***they designated*** Plaintiff's work location to be Jacksonville, Florida. *Id* at ¶ 23; *see Schultz v. Royal Caribbean Cruises, Ltd.*, 465 F.Supp.3d 1232, 1277 (S.D. Fla. 2020) (even though plaintiff was a Wisconsin resident and worked outside the State of Florida, plaintiff could bring an FCRA claim because "defendant discriminated against him in Florida . . . [it was] where Defendant gave him his offer and later withdrew it"). To now conveniently assert that the FCRA does not apply because the matter has no ties to Florida is disingenuous and must be rejected.

## V.   PLAINTIFF HAS ADEQUATELY ALLEGED JOINT EMPLOYER STATUS OF CROWLEY IN COUNTS I-VI

Defendants correctly state that "two or more businesses [can] be held liable for violations of Title VII [and the FCRA] under the 'joint employer' theory of recovery." Motion at 11. "To be considered a joint employer, an entity must exercise sufficient control over the terms and conditions of a plaintiff's

employment." *Coto v. Cardinal Grp. Mgmt. & Advisory, LLC*, No. 8:17-CV-704-T-30MAP, 2017 WL 2464092, at *2 (M.D. Fla. June 7, 2017).

In its futile attempt to dismiss itself from this case, Crowley claims "there are no allegations to imply that Crowley [] had any type [of] control over Plaintiff," other than the facts that: "(1) Crowley [] [was] a payroll company for [MMS], (2) Crowley['s] [] information was listed on [the Agreement], and (3) Crowley [] issued Plaintiff's paychecks." Motion at 12. That is patently false. In addition to the facts enumerated by Crowley, Plaintiff asserted that: Crowley had "significant control and supervision over Plaintiff" (AC, ¶ 29); BreAnn Hanenkrat ("Hanenkrat"), the assistant to Plaintiff's direct supervisor at Crowley, texted Plaintiff to check in on her and Plaintiff reported the harassment to Hanenkrat (*id.,* ¶ 55); Plaintiff emailed Lisa Haynie ("Haynie"), Plaintiff's direct supervisor at Crowley, and reminded Haynie about the harassment and asked her about her next assignment (*id.,* ¶ 72); "Crowley provided [Plaintiff] with a copy of the [Agreement] (*id.* ¶ 74); and Haynie scheduled a call with Plaintiff and informed her about other potential jobs (*id.,* ¶¶ 76-81). In other words, Crowley did not just issue paychecks as it claims; it retained and exercised significant control over Plaintiff's employment, and these facts are more than sufficient to establish joint employer status of Crowley at this stage. *See, e.g., Coto*, 2017 WL 2464092, at *2 (allegations were sufficient where plaintiff alleged that both entities "shared management decisions and supervisory duties with respect to Plaintiff's employment").

## VI.   PLAINTIFF ADEQUATELY ALLEGES A CLAIM UNDER THE JONES ACT

The Jones Act provides a cause of action in negligence for "a seaman injured in the course of employment."  46 U.S.C. § 30104.  "A Jones Act claim has four elements: (1) plaintiff is a seaman; (2) plaintiff suffered an injury in the course of employment; (3) plaintiff's employer was negligent; and (4) employer's negligence caused the employee's injury, at least in part."  *Bendis v. NCL (Bahamas), Ltd.*, No. 15-24731-CIV, 2015 WL 1124690, at *2 (S.D. Fla. March 11, 2015).  "The employer of a seaman is negligent under the Jones Act if the employer creates or permits a hazardous condition aboard the ship or if the employer fails to use reasonable care to provide a seaman with a safe place to work."  *Jackson v. NCL Am., LLC*, No. 14-23460-CIV, 2016 WL 9488717, at *2 (S.D. Fla. Jan. 26, 2016).  In other words, "[a]n employer is only liable under the Jones Act if the employer or its agents either knew or should have known of the dangerous condition."  *Id.*  In interpreting the Jones Act, the U.S. Supreme Court "has consistently recognized that the [Jones Act] 'was remedial, for the benefit and protection of seamen who are peculiarly the wards of admiralty. Its purpose was to enlarge that protection, not to narrow it.'"  *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 417 (2009).

As set forth in the AC, Plaintiff has sufficiently alleged each element required to assert claim under the Jones Act: (1) Plaintiff was a seaman because she was employed on board the Vessel (AC, ¶ 122); (2) Plaintiff suffered

emotional and psychological distress, including physical manifestations of such distress in the course of her employment (*id.,* ¶¶125, 134); (3) Defendants were negligent because they breached their duties of care when they became aware of the harassment, but failed to make any effort to thoroughly investigate or remedy the situation (*id.,* ¶ 126); and (4) as a direct and proximate cause of Defendants' negligence, Plaintiff suffered injuries.  *Id.,* ¶ 129.   Faced with these well-pled facts, citing to out-of-circuit and non-binding authorities,[3] Crowley Defendants claim Plaintiff must (and did not) establish "assault," because a sexual harassment claim "is only cognizable under the Jones Act where the alleged conduct also amounts to a common law tort."  Motion at 13.

Beside the fact that Plaintiff *has* provided detailed accounts that rise to the level of assault,[4] Plaintiff need not "meet the threshold for an assault," as Crowley Defendants insist at this time.   Indeed, in *John v. Royal Caribbean Cruises, Ltd.*, No. 07-22766-CIV, 2008 WL 11407153, at *1 (S.D. Fla. Jan. 24, 2008), a case

---

[3]Moreover, the out-of-circuit cases cited by Crowley Defendants are factually distinguishable to the case at hand.  *See, e.g., Powell v. Am. President Lines, Ltd.,* No. C08-1606 MJP, 2009 WL 4571831, at *4 (W.D. Wash. Dec. 1, 2009) (the alleged harassment *Powell* experienced, such as "written warnings and discharge, and [the allegation] that the Captain would talk to him in a condescending tone of voice as if Plaintiff did not know his job," were nothing like the experience Plaintiff endured); *Martinez v. Bally's Casino Lakeshore Resort,* CIV A 98-0828, 2000 WL 23099, at *2 (E.D. La. Jan. 12, 2000) (unlike here, neither plaintiff's complaint nor discovery responses indicated that she suffered physical manifestations of emotional injury); *Landry v. Delta Well Surveyors,* No. CIV.A. 963805, 1997 WL 191511, at *2 (E.D. La. Apr. 16, 1997) (unlike here, *Landry* did "not specifically allege[] negligence or even allud[ed] to the concept of negligence anywhere").

[4]In addition to all the allegations identified by Crowley Defendants (Motion at 14), Plaintiff also alleged that Bennett: came in and out of the galley for no apparent reason while Plaintiff worked (*id.,* ¶ 41); pinned her to the sink (*id.,* ¶ 42); attempted to kiss her (*id.,* ¶ 42); and deliberately sat at Plaintiff's usual seat in an apparent effort to assert dominance (*id.,* ¶ 54).  Plaintiff also alleges that she "lived in constant fear of physical harm by Bennett."  *Id.,* at ¶ 60.

Crowley Defendants rely on where the defendant attempted to do just that, the court denied defendant's motion to dismiss finding that it must "read[] the allegations of the complaint in the light most favorable to [plaintiff]," and "[w]hether [Plaintiff] can satisfy her burden of proof [] is a question for another day." Similarly, here, as discussed above, Plaintiff has adequately alleged each element of the Jones Act, thereby satisfying the pleading standard.

## VII.   PLAINTIFF ADEQUATELY ALLEGES A MAINTENANCE AND CURE CLAIM

"Maintenance and cure is designed to provide a seaman with food and lodging when [s]he becomes sick or injured in the ship's service; and it extends during the period when [s]he is incapacitated to do a seaman's work and continues until [s]he reaches maximum medical recovery." *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962). "Admiralty courts have been liberal in interpreting this duty 'for the benefit and protection of seamen who are its wards.'" *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 529 (1938). The U.S. Supreme Court noted "the shipowner's liability for maintenance and cure . . . [is] not to be defeated by restrictive distinctions nor 'narrowly confined.'" *Aguilar v. Standard Oil Co*., 318 U.S. 724, 735 (1943). "When there are ambiguities or doubts, they are resolved in favor of the seaman." *Vaughan,* 369 U.S. at 532. This "light burden" only requires Plaintiff to show: "(1) [s]he worked as a seaman; (2) [s]he became ill or injured while in the vessel's service; and (3) [s]he lost

wages or incurred expenditures relating to the treatment of the illness or injury." *Beeman v. F/V JUMA*, 2022 WL 1568337, at *1 (M.D. Fla. May 18, 2022).

Crowley Defendants state that Plaintiff failed to "identify the injury," or allege that she lost wages or incurred expenditures relating to treat the injury. Motion at 16.  However, as they admit, Plaintiff has alleged "injury": she asserted she "suffered emotional and psychological distress, including physical manifestations of such distress; for example, anxiety, nausea, breathing difficulties and insomnia, which developed while she worked onboard the Vessel as a result of the harassment she endured on the Vessel."  *Id.*; *see also* AC, ¶ 134.

Moreover, contrary to Crowley Defendants' assertion, the AC also alleged Plaintiff "lost wages" because she was unable to work as a result of Defendants' actions.  *Id.,* ¶¶ 81-82.  Plaintiff has also stated that Defendants "did not provide any medical care on-board or give her access to necessary medicines, medical equipment and facilities for diagnosis, treatment, medical information and/or expertise," nor did "they offer the opportunity to visit a qualified medical doctor." AC, ¶¶ 69, 70, 135; *Butts v. ALN Grp., LLC*, 512 F. Supp. 3d 1301, 1308 (S.D. Fla. 2021) (finding that given the "light burden," plaintiff's allegations that defendant refused to pay her maintenance and cure and that Plaintiff experience continued losses were sufficient to satisfy the third element).  Accordingly, Plaintiff has sufficiently plead a maintenance and cure claim.

## VIII. PLAINTIFF'S BREACH OF CONTRACT CLAIM WAS TIMELY

Crowley Defendants argue that Plaintiff's contract claim is barred because it was not brought within six months of the date of the alleged breach pursuant to the Agreement, which states that a "Crewmember must file any legal actions that he/she might have in connection with this Contract within six (6) months after termination." Motion at 17. This Court should not give credence to this argument.

As an initial matter, Crowley Defendants' argument that the Agreement limits Plaintiff's right to bring action within six months relies on contractual interpretation and is an improper inquiry at this stage. *Bordelon Marine, LLC v. ETRAC, Inc.*, 528 F. Supp. 3d 1280, 1286 (S.D. Fla. 2020) (denying motion to dismiss, stating "the Court may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary judgment").[5]

Moreover, the Maritime statute, 46 U.S.C.A. § 30508, that Crowley Defendants rely on for their contention that the contract claim is time-barred invalidates and voids the provision at issue. Specifically, 46 U.S.C.A. § 30508 provides, in pertinent part, that: the owner of a vessel "***may not*** limit by . . .

---

[5]*See also Geter v. Galardi S. Enters., Inc.*, 43 F. Supp. 3d 1322, 1328 (S.D. Fla. 2014) (even "[i]nterpretation of a clear and unambiguous contractual provision is a question of law properly decided on summary judgment"). Indeed, Crowley Defendants' legal authorities were decided during summary judgment. *See Donjoie v. Whitestone Gulf, Inc.*, No. 19-20298-CIV, 2019 WL 4917095, at *2 (S.D. Fla. Oct. 4, 2019) (applying Fed. R. Civ. P. 56 standard); *Baer's Furniture Co. v. Comcast Cable Commc'ns, LLC*, No. 20-61815-CIV, 2022 WL 2804858, at *3 (S.D. Fla. June 23, 2022) (same); *Farris v. Celebrity Cruises Inc.,* No. 11-21489-CIV, 2011 WL 13175627, at *3 (S.D. Fla. June 29, 2011), aff'd, 487 F. App'x 542 (11th Cir. 2012) (same).

contract, or otherwise the period for . . . bringing a civil action for personal injury . . . to **_less than one year_** after the date of the injury." *See also Farris*, 2011 WL 13175627, at *4 ("46 U.S.C. § 30508 provides that [owners of a vessel] may not contractually limit the time for filing suit to less than one year"). Thus, Crowley Defendants' six-month limitation is unenforceable *by its own admission* because the statute clearly establishes that one year is the **_minimum_** bar for bringing a civil action.[6]

Finally, even if the six-month time-constraint in the Agreement is found to be valid, MacMartin's claim was timely because she filed her claim with the Florida Commission of Human Relations ("FCHR") and U.S. Equal Employment Opportunity Commission ("EEOC") on May 13, 2021 (AC, ¶ 15) – within three months from when she was constructively terminated. The provision in the Agreement states that she must file "**_any_** legal action," which presumably encompasses a filing with the FCHR and EEOC. In any event, such interpretation of the contract must not be decided on a motion to dismiss.

## IX.   PLAINTIFF ADEQUATELY ALLEGES BREACH OF CONTRACT

The three elements of a breach of contract action are: "(1) a valid contract; (2) a material breach; and (3) damages." *See Beck v. Lazard Freres & Co., LLC,*

---

[6]Furthermore, because Defendants designated Plaintiff's work location to be Florida (AC, ¶ 23), the contract is also arguably dictated by Florida law, which provides that "any provision in a contract fixing the period of time within which an action arising out of the contract may be begun at a time less than that provided by the applicable statute of limitations is void." Fla. Stat. Ann. § 95.03.

175 F.3d 913 (11th Cir. 1999).[7]  Here, Crowley Defendants do not appear to refute that there was a valid contract (i.e., the Agreement), or that Plaintiff failed to allege a material breach or that she suffered damages.  Motion at 18-19.  Instead, Crowley Defendants again make arguments that are inappropriate at this stage.

Crowley Defendants argue that Plaintiff should have, but did not, provide "requisite notice as required under the Agreement" regarding her injuries.  Motion at 19.  Aside from the fact that this is factually incorrect because Plaintiff has alleged that she complained about the harassment and her fears on numerous occasions to at least five different individuals (verbally *and* in writing) (AC, ¶¶ 39, 43, 45-46, 55, 57, 62, 72, 77), this argument also fails because it "centers on the interpretation of language in the contract and asks this Court to interpret the contract in [Defendants'] favor.  At a motion to dismiss, it is inappropriate to decide such a factual matter."  *Whitney Nat. Bank v. SDC Communities, Inc.*, No. 809CV01788EAKTBM, 2010 WL 1270264, at *2 (M.D. Fla. Apr. 1, 2010).[8]

Crowley Defendants also make a blanket assertion that Plaintiff's breach of contract claim is legally insufficient because she did not allege facts to show that:

> (a) she had a contractual need for repatriation; (b) she was not paid in full for her entire time on the subject vessel, regardless of her medical,

---

[7]"The elements of a breach of contract claim under Florida law and admiralty law are the same: 'a plaintiff must prove (1) the terms of a maritime contract; (2) that the contract was breached; and (3) the reasonable value of the purported damages.'"  *Am. Marine Tech., Inc. v. M/Y Alchemist,* 526 F. Supp. 3d 1236, 1247 (S.D. Fla. 2021), *aff'd sub nom. Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.,* No. 21-11336, 2021 WL 4785888 (11th Cir. Oct. 14, 2021).

[8]*See also Collins v. Certain Underwriters at Lloyd's, London Subscribing to Pol'y No.* B0723AI00342A10, No. 11-CV-24390, 2012 WL 13014690, at *2 (S.D. Fla. Apr. 24, 2012) ("The details are to be fleshed out in litigation, not truncated in the context of a motion to dismiss").

psychological, or emotional condition;[9] (c) that Crowley Defendants were contractually obligated to continue giving Plaintiff 6-week rotating positions regardless of the circumstances; (d) that she provided notice and/or requested medical care; (e) that she was denied medical care; (f) that she requested leave to visit a qualified doctor; or that (g) she was denied the opportunity to visit a qualified doctor.  Motion at 19-20.

Each of these points lack merit.

First, with respect to (c) above, the AC explicitly asserted the "Agreement provided that MacMartin would work a continuous rotating schedule on the Vessel: six weeks on and six weeks off."  AC, ¶ 25.  While Crowley Defendants seem to imply that the rotating schedule could have changed based on specific "circumstances," they fail to elaborate what those circumstances are, presumably because there are no exceptions to the rotating schedule.[10]

Second, regarding (a), (d) through (g), Plaintiff has alleged sufficient facts.  As detailed in the AC, Plaintiff complained about the harassment and her fears on numerous occasions (AC, ¶¶ 39, 43, 45-46, 55, 57, 62, 72, 77), therefore, Defendants were aware that she needed to be repatriated, needed medical care and an opportunity to see a medical doctor.  Instead, Defendants not only ignored her complaints, but yelled at her and told to "get over it."  *Id.*, ¶ 58.  At that point, Plaintiff explained that she "could no longer 'speak up' and seek help from Defendants."  *Id.,* ¶ 59.  Consequently, as stated in the AC, "Defendants did

---

[9]Plaintiff acknowledges that she has not stated sufficient facts to support (b), that she was not paid her normal basic renumeration during the time she was on the Vessel, regardless of her medical, psychological, or emotional condition.  If the Court requires, Plaintiff is ready and able to amend the AC to correct the foregoing.

[10]Defendant's argument is also unavailing because the court is "limited to the four corners of the complaint" during a motion to dismiss.  *Kothmann v. Rosario*, 558 F. App'x 907, 911 (11th Cir. 2014).

not provide any medical care on-board . . . or offer[] [her] the opportunity to leave the Vessel to visit a qualified medical doctor" to treat her emotional and psychological distress, including physical manifestations of such distress. *Id.,* ¶¶ 68-71.  In any event, "[t]he standard by which this Court must evaluate defendant's motion to dismiss is whether plaintiff has alleged facts to prove above a speculative level that it is entitled to relief, taking the allegations in the complaint as true and construing the facts in the light most favorable to the plaintiff." *Whitney Nat. Bank*, 2010 WL 1270264, at *2.  Thus, Plaintiff has sufficiently alleged a breach of contract claim.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Crowley Defendants' Motion.  Alternatively, should this Court find that Plaintiff failed to state a claim under Rule 12(b)(6), Plaintiff requests that she be allowed leave to amend.[11]

Dated: September 6, 2022

Respectfully submitted,

MILLER SHAH LLP

*/s/ Nathan C. Zipperian*
Nathan C. Zipperian
1625 N. Commerce Parkway, Ste. 320
Ft. Lauderdale, FL 33326
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: nczipperian@millershah.com

---

[11]*Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984) (Rule 15(a) reflects a policy of "liberally permitting amendments" and absent a "substantial reason to deny leave to amend" a plaintiff's request should be granted).

Chiharu G. Sekino (admitted PHV)
Casey T. Yamasaki (admitted PHV)
MILLER SHAH LLP
1230 Columbia Street, Ste. 1140
San Diego, CA 92101
Telephone: 619-235-2416
Facsimile: 866-300-7367
cgsekino@millershah.com
ctyamasaki@millershah.com